IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


RICKY LEE TAYLOR,

    Petitioner,

v.                                                CASE NO. 4:05-cv-00403-MP-AK

MONICA DAVID, FREDERICK B. DUNPHY,
FLORIDA PAROLE COMMISSION, and
TENA M. PATE,

    Respondents.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 1, petition for writ of habeas corpus, by Ricky Lee Taylor. Respondents have filed an amended answer, Doc. 26, and Petitioner has filed an amended reply. Doc. 27. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the petition be denied.

## BACKGROUND

In 1992, Petitioner was sentenced by the Circuit Court of Hillsborough County, Florida, to 15 years imprisonment. In 1996, pursuant to Petitioner's request for an interstate compact transfer, he was transferred from the Florida Department of Corrections to the Alabama Department of Corrections. In requesting transfer, the chief of interstate compacts advised Alabama officials that if the transfer was granted, then FDOC "would require progress reports

every six (6) months in order that we may credit any gain time for which [Petitioner] may be eligible" and as Petitioner approached release, "additional contacts may be made with your agency to determine final gain time credits and to establish a final release date."  Doc. 26, Ex. G. According to Petitioner, from 1996 until his release from incarceration in 1999, he had no further contact with Florida officials, and he had no end of sentence release interview and received no end of sentence release package "so that [he] would be aware of all upcoming things required of me by the Florida Parole Commission upon [his] release from prison...."  Doc. 1.

On March 8, 1999, the correctional programs administrator for the FDOC sent Alabama officials a letter advising, "Our interest in [Petitioner] will terminate on March 9, 1999, by expiration of sentence.  Attached is a Certificate of Discharge to be given to subject at the time of release.  On termination date, this is your authority to withdraw our detainer."  Doc. 26, Ex. G.  At the bottom of the letter is the following notation: "Subject has Probation in: Conditional Release Supervision transferred to Alabama."  *Id*.

On March 8, 1999, Petitioner signed a "Certificate of Conditional Release and Terms and Conditions of Supervision," indicating that he had "received certificates reflecting reporting instructions, terms and standard conditions of conditional release and subsequent pages delineating special conditions of conditional release" and that he acknowledged that he was subject to the terms and conditions of conditional release."  *Id*.  In fact, he signed the certificate in two separate places.  *Id*.  Petitioner was released the following day.

On February 4, 2004, Petitioner was arrested for "failure to report/failure to pay monthly fees."  Doc. 1.  He was apparently found guilty of the violation, as he is now incarcerated to

serve the remainder of the 1992 sentence.  *Id*.

Petitioner sought habeas relief in state court based on the Commission's failure "to follow its own rules and regulations."  Doc. 26, Ex. A.  In his state court petition, he claimed that he was "being unconstitutionally restrained of his liberty," accused the Commission of abusing its authority and discretion and violating his due process rights "per the 4th, 6th, and 14th amendments to the U.S. Constitution where Petitioner was never given notice of conditions of his release program," and claimed the right to "immediate release for violation of rights to due process of law and equal protection...."  *Id*.

The state court denied the petition, finding that Petitioner had failed "to demonstrate an entitlement to relief" or that the Commission abused its discretion."  Doc. 26, Ex. B.  Petitioner's request for a writ of certiorari was denied on the merits.  Doc. 26, Ex. E & F.

The instant petition followed.  In this proceeding, Petitioner raises four claims for relief, each of which will be addressed in turn.

## **DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of

clearly established federal law. *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Finally, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. §§ 2254(b)(1) & (c)). To fully exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. at 845. In addition, "the federal claim must be fairly presented to the state courts," and it must be "the same claim." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*).

Claims which have not been fairly presented to the state court but are defaulted from state court review are considered technically exhausted because no remedies are available for purposes of § 2254(c). *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). *See also White v. State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on post-conviction and were not so raised are procedurally defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

> I.  "Violation Amend. IV Section 1 and Amend. XIV Section 1 of U.S. Const.: Article 1 Section 9 of the Florida Const. of Petitioner's Due Process Right by not following "its" Release Procedures of 1997 F.S. 947.1405 § 5 before Petitioner was released from prison on March 9, 1999."

According to Petitioner, the Commission did not follow its own procedures for

applying conditional release because it never interviewed him or gave him a hearing "for this said conditional release program." Doc. 1.

Section 947.1405 of the Florida Statutes provides, in pertinent part, that an inmate who has been convicted of a criminal offense which occurred on or after October 1, 1988, and who has at least one prior felony commitment "shall, upon reaching the tentative release date or provisional release date, whichever is earlier...be released under supervision subject to specified terms and conditions..." Fla. Stat. Ann. § 947.1405(2) (1999). "Conditional Release...is *not* an early release program. Conditional Release is an *extra* post-prison probation-type program." *Evans v. Singletary*, 737 So.2d 505, 507 (Fla. 1999) (emphasis in original). "[W]hen an inmate is released due to gain time from a sentence that is eligible for Conditional Release, instead of going free as other offenders would do...these offenders are placed on supervision for the amount of time equal to the gain time they have accrued." *Evans*, 737 So.2d at 507.

At the time of Petitioner's release in 1999, § 947.1405 stated:

(5) Within 180 days prior to the tentative release date or provisional release date, whichever is earlier, a representative of the commission shall interview the inmate. The commission representative shall review the inmate's program participation, disciplinary record, psychological and medical records, and any other information pertinent to the impending release. A commission representative shall conduct a personal interview with the inmate for the purpose of determining the details of the inmate's release plan, including the inmate's planned residence and employment. The results of the interview must be forwarded to the commission in writing.

(6) Upon receipt of notice as required under § 947.175, the commission shall conduct a review of the inmate's record for the purpose of establishing the terms and conditions of the conditional release. The

>commission may impose any special conditions it considers warranted
>from its review of the record.  If the commission determines that the
>inmate is eligible for release under this section, the commission shall enter
>an order establishing the length of supervision and the conditions
>attendant thereto.

§ 947.1405(5) & (6) (1999).[1]

There has never been any requirement that an inmate being released to conditional release be afforded a pre-release hearing, and thus, the hearing provisions of the interstate compact statutes do not apply.  *See* Fla. Stat. Ann. § 941.56.  Because he had no right to a "hearing," only an "interview," he has not stated a cognizable due process violation.  While there is no evidence to suggest that a representative of the Commission met with Petitioner before the Commission prepared the plan of release, at most, this would be a violation of state law not reviewable by this Court in a habeas proceedings.  Furthermore, Petitioner cannot seriously dispute that he did in fact meet with a "representative of the commission" in the form of an ADOC classification specialist supervisor on the day before release to review the terms and conditions of release that had been set by the Commission.  That document, which Petitioner plainly signed, showed his planned place of residence and the address for his supervisor, and, approximately one inch above his second signature, it gave him a toll free telephone number for the Commission for him to call "within three (3) working days of...release...." Doc. 26, Ex. G.  He cannot therefore claim that he did not have notice of the terms and

---

[1] The responsibility for the interview now lies with the FDOC, and the Commission then sets the terms of conditional release based on the Department's recommendation and "such other information as it deems relevant." Fla. Stat. Ann. § 947.1405(5) & (6) (2008).

conditions of his release, including the requirement that he immediately report his release to the Commission and that he pay the cost of supervision pursuant to Fla. Stat. Ann. § 948.09.

> II. "Violation Amend. XIV Section 1 of U.S. Const.: Article 1 Section 2 of the Fla. Const. of Petitioner's Equal Protection Right by not releasing and giving Petitioner Interview/Hearing before releasing him as they release other prisoners."

Petitioner has not stated anything in his petition to indicate that his equal protection rights were violated in any way regarding the manner in which he was released. As discussed in the previous section, at most, the Commission failed to follow its statutory obligations, but the violation of state law does not state a claim for relief in a habeas proceeding. While Petitioner, an African-American, certainly belongs to a protected class for purposes of the Equal Protection Clause, there is nothing in his pleadings to suggest that he was treated differently (assuming *arguendo* that he was treated differently) because of his race. *See Sweet v. Secretary Department of Corrections*, 467 F.3d 1311, 1318-19 (11th Cir. 2006) (to establish equal protection claim, petitioner must show that he is similarly situated to others who received more favorable treatment and that state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis); *see also Thomas v. Georgia State Board of Pardons*, 881 F.2d 1032, 1033 n.3 (11th Cir. 1989) (equal protection claim based on parole decision must establish that "parole decisions were made on the basis of race, poverty, or some other constitutionally invalid reason").

> III. "Violation Amend. V U.S. Const.: Article 1 Section 18 of the Florida Const. False Imprisonment when after being acknowledged of fact that Petitioner's Due

> Process Right was violated in 1998/99 Florida Parole Commissioners continue to keep Petitioner imprisoned."

Because Petitioner's constitutional rights were not violated in the manner of his conditional release, he cannot state a claim for false imprisonment.

> IV. "Violation Amend. XIV Section 1 and Amend. IV Section 1 U.S. Const.: Article 1 Section 9 of the Fla. Const. of Petitioner's Due Process Right by Florida Parole Commissioners failure to comply with F.S. (of 1997) 947.1405 § 5 and imprisoned Petitioner for violating the same 947 statute procedures and others."

This appears to be a restatement of the first claim, and further discussion of it is not warranted except to this extent. In his reply, Petitioner complains that he was not informed "as to who to report to [or] where to report to." While it is true that the paperwork did not state those specifics, it is equally true that Petitioner was provided a toll free telephone number to call, and he certainly could have asked for clearer directions and more particulars in that phone call and any subsequent phone calls. Petitioner claims in reply that the terms and conditions were not readable or understandable; however, that argument is unpersuasive, as Petition could have refused to sign the conditional release papers until such time as someone more familiar with Florida release procedures could have contacted him and provided him with a clearer copy of the paperwork. He also could have signed them with a reservation that a more readable copy be immediately forwarded to him at his planned residence. In short, if Petitioner had persisted in efforts to understand the terms of release and made a record of those efforts, then perhaps he would have had grounds for contesting the revocation. As it stood, he signed the form, not once, but twice, indicating his receipt and understanding of the terms and conditions

of his release. With that in hand, the state court did not err in finding that the Commission did not abuse its discretion in revoking conditional release.

**CONCLUSION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the petition for writ of habeas corpus, Doc. 1, be **DENIED**, and that this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this **10th** day of March, 2008.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**